161614 Voxathon v. FCA Good morning, your honors. David Bennett on behalf of the appellant and patent owner of Voxathon. I reserve four minutes for rebuttal. Before addressing why the district court erred in invalidating the claims of the patent as abstract under section 101, I will address the defendant's collateral estoppel argument that they raised in their responsive brief. Their argument in collateral estoppel is that the identical order which is being appealed here and the identical judgment which is being appealed here in the lead case collaterally stops itself from being appealed because it was also entered in one of the consolidated cases against FCA. The FCA case is listed in this appeal. FCA is listed in the caption of this appeal. So here you're not dealing with any prior litigation. You're not dealing with a separate litigation or a separate decision. So when you're talking about collateral estoppel, you're looking for something that's a prior determination of invalidity. That's not occurring here. And when you're looking specifically with respect to FCA, FCA never filed a motion for summary judgment. They never filed a motion to dismiss. They never joined a motion. They never attended the hearing. So there was never any argument between Voxathon and FCA where there was a chance to litigate this with respect to FCA. OK. Well, speaking only for myself, obviously, but why don't you move on? I prefer you move on to the 101 issue. Thank you, Your Honor. In 101, with the first step with respect to the patent, the error with the district court was not looking at the claims and what they are directed to. What they are directed to is an attendant telephone set with call appearance buttons. And those call appearance buttons do something that did not occur previously in the prior art. So this is a new telephone device to do something new. The court said that the abstract idea was responding to a sender of a message. But that doesn't tell you anything about what the claims are about. The court actually referred to the fact that this could be just responding to a letter. Somebody gets a letter, writes a response, and mails it back. The court implied that these claims would somehow prohibit that from being performed. When you look at the claims, it's a preemption matter. Yeah, that would be potentially an So what the court did, if you read the opinion, the court set up what the abstract idea was and then analyzed the abstract idea to determine what would possibly be infringing and why it's abstract, as opposed to looking at the claims, seeing what the claims are directed to, as opposed to what the purpose is or what they're supposed to result in, what the performance is. Here, there's a particular device that's being claimed. Even in the method claim, Fox-A-Thon's brief focused on claim 4, which is a system claim. Claim 1 is a method claim, but the method is performed using a device, which is the attendant telephone set with call appearance buttons, and then it walks through what's special about the particular call appearance buttons in the case. So what has happened, and there's actually five different abstract ideas that have been alleged, but all of them fail to address the claim itself. What is the claim directed to here? Attendant telephone set with call appearance buttons. So this is like in N-Fish. But that's not really the contribution to the telephone arts that the inventor came up with, right? I mean, you recite a telephone set. You recite a telephone set with call buttons. A telephone set with call buttons, a processor, and a memory. But all of that was established conventional technology in the phone arts by the time this person filed his patent application. So in terms of trying to boil down what was the contribution here by the inventor, it seems to be identifying the incoming call phone numbers, and then assigning those phone numbers to the speed dial buttons on the phone set. And so that seems like if there's a focus of the claim, it's that action. It's that activity. Yes, it would be. That would be the focus, which is having... There's nothing else claimed in here about a new way of manufacturing a phone, or a new way of manufacturing a different processor, or a new way of buttons on a phone. It's more about the thing that's different, or the purported contribution is assigning phone call number data to buttons. It was already known in the art to assign phone call numbers to buttons. So the real gist here is the nature of the phone call numbers. It's not just my top five friends and family members. It is the particular most recent five phone call numbers that have called my phone set. I would say that what you're addressing here is the prior art telephones that were out there, we're talking 1999, did not have a telephone that could perform what's being claimed. Are you saying there were no speed dial buttons before 1999? No, Your Honor, there were speed dial buttons, but a speed dial button would have to be manually programmed with a number which may or may not have been called in. I don't understand. I thought that the disclosure was that this wasn't the prior art, but what you came up with was a new function for these buttons, right? Is that what you're saying? Well, if you had a telephone, the prior art telephone, you could not, as far as I'm aware, take that, maybe you would have to take it apart, rewire it, reprogramming it in order to get it to store the information in that way. So it wasn't like you could just take a telephone set and say, now I want the incoming phone call to just go to this button. It didn't occur that way. But caller ID existed. Yes, caller ID existed, correct. And call logs, where you could scroll up and down a call log on the display of the phone and see who were the most recent callers to your phone, that was also known. Yes, Your Honor, and that's described in the specification also. Right, and it was also known to assign the five most recent phone numbers that you personally called out to, to certain speed dial buttons. That's Marotiac, right, the prior art reference? Yes. Okay. So I guess the point I'm getting at is what I think this case boils down to, or the nature of the contribution of this inventor, is the character of the phone call numbers that have been assigned to the buttons. It was already known to assign phone call numbers to buttons. It was also known already to dynamically assign those phone numbers based on some preferred choice, according to the prior art, was the most recent outgoing phone call numbers. This inventor says, well, let's change the phone call numbers. Instead of those phone call numbers, we're going to have the most recent calling in phone numbers assigned to those buttons. So I guess the question is, is that an inventive concept, the idea of choosing one set of phone call numbers over a known pre-existing set of phone call numbers to be assigned to those speed dial buttons? From the perspective of Section 101, yes, it would be an inventive concept. From a perspective of 102 and 103, that would be something that would be determined as to whether all they're doing is, is it obvious or is it anticipated by a prior art reference? The concern I have is, you know, we have, we have decisions now from this court the past couple of years that say if the inventive concept has something to do with storing information, displaying information, transmitting information, organizing information, those are abstract ideas and the fact that the information, the nature of information is something different than what was actually in the prior art by itself isn't good enough to be an inventive concept. And so now we've been discussing the nature of this invention and we're talking about phone call number data being assigned to buttons that was already known and conventional. Now we're debating or quibbling over the nature of what type of phone call number data we're going to assign to those buttons. It seems to be, I guess I'm troubled with how we're going to find that this is an inventive concept when we've found other types of inventions about the nature of data not being good enough to be an inventive concept. In those other cases there was use of say a generic computer which could be technically programmed to do anything and there was just a reference to a generic computer. When you look at the claims themselves they weren't specifically limited to a particular type of device. So here you have to have an attended telephone set with a button in which when a number comes in it is assigned to that button and when that button is selected it goes and calls that number. Well couldn't the same be said about a number of our cases where we said just a generic computer isn't enough but in those cases didn't the claims take this generic computer and at least do something with it? In those cases I guess the argument here could be is there a new button or is there not a new button? In our argument and the way we propose that the claim should be an inventive button. It was different from what the prior ARC buttons were. So is it sufficiently different to be inventive? Well if it's Isn't that what DDR is asking? That's what NFISH is asking? And I think in those Isn't it true that some of our cases are using step two analysis to inform the step one inquiry? I would say at some point you have to come back to the Supreme Court's language of what is an abstract idea. But I mean if I were interpreting Alice in the first case that came here after Alice I might agree with you but we've got case law that seems to me that says it's okay in the analytic process to use step two thinking to ask yourself whether or not there's an abstraction here. So among other things, Judge Gilstrap was saying that claim one of your patent recites the steps of selecting, storing, and retrieving phone information. That sounds abstract. That's right and if the claim only broadly claimed that, that would be correct. If this could be performed with a standard telephone, there would be a problem. And by standard telephone, I'm talking about any telephone that existed in 1990. But the question is, has something happened to the telephone that you're using that's embedded? Isn't that what DDR was saying? DDR was saying, well, what the claims were doing from step two is they were teaching a computer to do something it didn't want to do. And in this case they are teaching a button to do what has not been previously programmed to do. So this would be a new button, a new physical button. So if there's a new physical button on a device to say that it is abstract, sort of takes away what is then, what meaning does abstract have? If there is a concrete... Is that how you would argue this case sort of under DDR? Say for example, we lied between step one question and we say, well, if I can DDR, I don't need to decide necessarily whether it is or is not abstract because if it is, it's saved under step two. Yes, I would agree that under step two it's also saved. Do you think this is really a DDR type case where if assuming arguendo there is an abstraction, nonetheless it's saved under step two because something unusual is happening with the telephone? Yes. If your honors were to find that it was an abstract idea under the second step, you would also say that the patent is patent eligible subject matter because there are new buttons. You may think that the buttons are not particularly difficult to do, it was easy to do, but that's a separate issue. That would be an obviousness issue. Would somebody skilled in the art, would it have been obvious for them to just do this simple step? But in this case, you have a new telephone device. You may think it's a simple idea, but that doesn't make it abstract. It makes it a concrete idea. Not only concrete in terms of a physical form, because you have a physical new telephone device, but it's concrete in terms of what the defined scope of the invention is. So if you want to think of abstract as is it a vague idea, you can look at it from, well, is it not tied to anything? So that's where you have the generic computer. Would it be unfair to look at this claim and say what this claim is doing is it's basically organizing call data using this phone with the buttons on it? That's one of the steps, yes. Organizing the call data to it. It's organizing the call data in an organizing sense of bringing it in, holding it, sending it back out. Organizing in a very broad sense. Not in a broad sense, because how it's doing it is with a new device. A new device with a new button. Now, as I said, you may think it's obvious. You may think it's a very simple idea. You would challenge the notion that the abstract idea is organizing call data. That's correct. It's organizing it in a certain way. Just to say, that's what this claim is really drawn to. It's drawn to organizing call data. No. Your Honor, I would say respectfully that it's drawn to a new device that organizes call data in a particular way. It's a myth that you've got method claims, right? Yes, and the method claim requires a particular use of a telephone attendant, attendant telephone set with call appearance buttons that have certain functionality, which did not exist in the prior. So this is a, the call appearance buttons, there's lots of different things that can occur with a call appearance button. Okay, I'm sorry, but we're way over time. So why don't we hear from the other side and we'll store two minutes of rebuttal. Thank you. Good afternoon, Your Honor. May it please the Court. I want to go back to the question that Judge Chen asked at the outset of my colleague's discussion. I believe Your Honor stated that one way to look at this case would be that it boils down to the inventiveness of assigning certain types of numbers to buttons. The case law is clear that substituting one well-known and generic implementation, for example, a display that is clearly described in the specification for another, a series of buttons, which we submit is also conventional and well-known, does not transfer the abstract idea claimed in this patent into a patent-eligible application, especially whereas here, we know that those two conventional implementations were not only well-known, but are in fact interchangeable. Turning briefly to the abstract idea, and then I think I'd like to spend the balance of my time discussing the prong two analysis. You've changed your view of the abstract idea from what you argued at the district court. You don't agree with Judge Gilstrap. But you instead propose that it's the abstract idea of redialing a telephone when prompted by an attendee. Your Honor, we don't disagree with Judge Gilstrap. In fact, I think if we look to Judge Gilstrap's... Well, you don't embrace his concept. I think that there are multiple ways to express this abstract idea. It's, of course, settled law that this court reviews judgments, not opinions. And the case law on this issue is replete with the notion that the abstract idea can be expressed in many ways. It's not necessary that everybody agree on the exact verbiage of how to express that abstract idea. Well, I guess that's true. But there's kind of... You'd like to know that the other side, that what we're all... The script we're all working off of, we know what the parameters of that are. But why don't you tell us then what your current articulation is of the abstract idea and explain to us how it differs from Judge Gilstrap's. That's fair, Your Honor. And my response to that is it does not differ, in fact, from Judge Gilstrap's. If you look to Judge Gilstrap's order, on page 6 of his order, that's appendix page 8, this is where Judge Gilstrap addresses step 1 of the Alice Mayo analysis. At the first sentence there, in the first complete paragraph, Judge Gilstrap explains that he reads the abstract idea as responding to a sender of a message. If you read down the page... How far down? The middle of the next paragraph, there's a sentence that says, for example, claim 1 is really nothing more than the automation of responding to the sender of a message received on a telephone. Okay. Judge Gilstrap is not contradicting himself. And how is that different from responding to... responding to the sender of a message? Yes, he's added in the discussion that it's responding particularly to the sender of a message received on a telephone. Okay. Our formulation in our response brief in this appeal of the abstract idea as redialing a telephone number is... Well, if you look back over on page 7 of his opinion in A9, merely performs the abstract idea of responding to the sender of a message. So he's vacillating between... You're just responding to any old message or a telephone message? I don't see... Or a sloppy opinion? I mean, what's going on here? I think that Judge Gilstrap's opinion is internally consistent, Your Honor. We don't view it as vacillating. I think that the abstract idea, because of its very nature as an abstract idea, is open to various phrasings. Would you agree that the abstract idea of whatever it is is tied to a telephone? Yes. In these claims, there is a telephone recital. Tied to a telephone. Now, I think it's very important to point out that just as in the TLI case, which is exactly on all fours with this case, even though the claims require a physical telephone unit in this case, and I'm quoting from TLI here, the telephone unit itself is merely a conduit for that abstract idea. So it's responding to telephone calls? The... That's really what it boils down to. This abstract idea here is responding to telephone calls. Why do you have to say, when prompted by an attendant? Well, I think that that's the most charitable reading of the abstract idea. This is a summary judgment, Rule 56 motion. So taking all of the inferences in patentee's favor, I think the most charitable... What's the attendant? The prompting is the button? I assume so. I thought you put it in there. Yeah, as much as I can... You think that's gonna take care of the buttons? I don't think it takes care of the buttons. I think the buttons take care of themselves. This is reading the specification in the way most charitably to the... and taking every inference in the patentee's favor, Your Honor. So if the claim is responding to a telephone when prompted by an attendant, so somebody standing by the telephone when the call came in on caller ID that told you to respond to the call would be covered by that claim? I believe it would be. I think also the... Really? I mean, when you read about the buttons? I think that the abstract idea here is that there's a prompting. You're prompted by an attendant. You've got, you know, Clevenger standing by the phone. It comes in, and I see the caller ID number, and it's my wife's son, and I say, Honey, return that call. And your formulation of the claim would cover that. I think that's an infringement analysis. I'm talking here about the patentability. That's the scope of the claim. Yeah, and I don't... There are buttons recited in the claim, and we don't read those out. Our argument is that on a 101 analysis, in particular on Step 1, that the simple recitation of that generic conventional hardware button does not save the claim from unpatentability. It's different than either a 102 or 103 analysis as well as an infringement analysis. But his argument is that, fine, you want to call an abstract idea of retiling a telephone, but that's retiling a telephone in a particular way. And I... And then once you say in a particular way, you've tied in his telephone with the button. Again, I think we need to... The abstract idea analysis, as this court has repeatedly recognized, is tricky. One of the best analytic tools we have, as taught by this court, is to look at other cases with similar facts and see if the abstract idea there matches up. It's a particularly powerful analytic tool in this case because we have the TLI decision, and, to be fair, the content extraction decision, both of which are strikingly similar to the facts we're faced with here. Again, um... In the TLI case, the court made clear that under Alice Step 1, Boxathon's claim that it invents a new telephone with new call appearance buttons does not rescue the claim from being directed to an abstract idea of redialing that telephone number when prompted. The 261 patent, as Your Honor has previously alluded, is... One way to look at it is an example of organizing human activity. Returning missed calls is something we've all done. It was certainly being done long before 1999, the time of this patent. Receiving, organizing, and storing phone numbers from missed calls is very similar, if not effectively the same, as the well-known concept, the well-known abstract concept, of data collection, recognition, and storage that was found to be abstract in content extraction in several other similar cases. The patentee urges that there is unconventional hardware here, or perhaps that it's being used in an unconventional way. Because this is a Rule 56 appeal, we need to look at the record to see what record evidence we have of that. And when we examine the record, it turns out that there is no conventional hard... Sorry, there is no unconventional hardware here, and the conventional hardware is being used in a very conventional way to achieve a very conventional result. There's no dispute that telephones were known. I think it bears note that the only description of the particular... The question is whether or not there's a plausible argument that there's not an abstract idea here. That's fair, Your Honor. I'll go back to... There's a recent precedent in Toronto. I can't remember the name of it that says if there's a plausible argument that there's a non... The idea is non-abstract and you can't resolve the matter on summary judgment. I'm not sure if there's a plausible argument here, so I have a hard time answering that in the abstract. I understand that if there is a dispute of material fact that would cause this court to reverse or to remand back to the district court for further consideration. Here, there is no dispute of material fact, and that's what I'm trying to get to. We can look at the record and see that they're... Viewing everything in Patnick's favour, there is no dispute of material fact about the abstractness of this claim. The... But you have a genuine dispute between you and your adversary as to whether or not it's proper to reduce this patent to an abstraction. I recognize that that is a dispute that brings us before the court now. And that's in our analysis under 101's illegal question. That's correct. But I do believe we have a recent precedent that says, well, if it's a plausible argument that the claim is not drawn to an abstraction, then there needs to be a trial. I don't dispute the precedent. I would say that this case is well outside that precedent. There is no plausible argument here, Your Honour, that these claims are not drawn to an abstract idea. The court has taught over and over that Fluke, going back quite a ways, stands for the proposition that the prohibition against... But you've agreed that it's responding to telephone calls. So the telephone is tied up in whatever this abstraction is. So this is just a matter of responding to calls, which would be pretty broad. It's responding to calls coming in on a telephone. The recitation of the... And the empty field is narrowed down to telephones. It's not responding to computer messages, right? Would this patent cover responding to messages over a computer, using a computer? If there's a phone on the other side and the computer... It is possible to send telephone calls. Even if it's just computer to computer? Computer to computer. Email messages. The claims do recite a telephone. Okay. That's what I'm trying to get at, is that if you worry about preemption, the field is a little narrower than just returning all messages. And the court has held repeatedly that complete preemption, subject matter preemption, is not required. It is one clue as to the abstractness, but a failure to preempt every kind of communication does not necessarily lead to a finding of a lacking abstract idea. Again... And where do we... What is the proposition that you can... Human can do it himself? Where does that take us in one-on-one analysis? Well, I think it takes us back quite a ways through the series of cases that hold that simply reciting generic hardware to overcome human error, to automate a human process or speed it up, is not sufficient to overcome the unpatentability analysis. The only facts... That means you've already established that there is an abstract idea. And so just doing it faster doesn't mean that... Does the fact that Gilstrap had in his opinions or a human being, these are steps a human can do. Why does that have any relevance to step one analysis? I agree with Your Honor that it... I'm sorry? To step one. That's right. And I agree with Your Honor that that relevance is clearly established as to step two. Looking at step... And I believe that may have been what the court was addressing in the opinion there, although as some of the opinions come from this court, the two steps sometimes get somewhat conflated. That said, looking at step one, I think it shows the very conventional nature of this technology. This is not, like many of the cases, a very particular, narrow, DDR for example, technical issue that's being solved. This is responding to telephone messages. This is not a very specific, highly difficult problem that's being solved. And the way it's being solved is not unconventional either. So I think that when you take it and look at that, whether the idea is abstract itself, we have to be taught by... We should not be dissuaded, rather, by the mere recitation of certain hardware elements, especially generic, conventional hardware elements here. Again, I do think it's important to note that Fluke states that ideas can't be... He's invented a better mousetrap. I'm sorry? You're ever sort of saying he's invented a better mousetrap. The mousetrap is the telephone. I appreciate that. It would be like if somebody had a mousetrap, and so they said, well, we've got a little, you know, better position for putting the cheese on it. Somebody said, well, that's an abstract idea of catching animals. You've encapsulated the patentee's argument well, Your Honor, and we disagree with it. The mere insistence over and over of a new telephone and a new button or a new telephone system doesn't actually make it a new telephone button or a new telephone system. The intrinsic evidence... It doesn't make it for 103, but it may not... They may not satisfy 102 or 103. I agree with that as well, but you cannot overcome a 101 inquiry simply by saying, oh, but it's new. I've got hardware, and it's new. The record must show that, and if we look at the claims, if we look at the patent, if we look at the expert declaration put forward by the patentee, we see that, as Judge Cheng was alluding to early on, there's no dispute the telephone is known. The only description of this telephone is in figure 2 of a processor next to a memory with no description of how that works beyond that. Caller identification at column 4 and 5 in the patent is described. Call recovery features is in column 1 as the prior art. Call logging and storing, again, column 1. The processor, Mr. McNally testifies. This is at Joint Appendix 334, paragraph 35. He says, there are well-known processors available on the market that could process multiple incoming phone lines. He then says at paragraph 43 on appendix page 336 that areas allotting areas in memory for storing particular telephones were known. Well, that's all step 2, Judge. I think what it gets to, Your Honor, is that this is exactly the kind of lip service to hardware that does not negate or does not prevent the finding of an abstract idea. These claims, the only hardware, in other words, we see recited in these claims. I thought you were saying if it flunked step 2, it flunked step 1. I think we have to take it in order. I think we cannot get to the... Isn't that really where it's coming to? I mean, to say we're going to get a hard case to decide on step 1 so what you do is you go look and see what's step 2 answer or step 2 answer that takes care of step 1. No, Your Honor. I think we have to apply the analysis step 1, step 2 and here there is  of... Run it by me once more. Certainly. Responding to a telephone call when prompted by an attendant and that is consistent with the abstract idea discussed in Judge and it is also demonstrated by the fact that the only hardware that Patentee can rely on to take this out of the realm of abstractness is conventional well-known prior art hardware with no additional disclosure of how any of this assignment would take place. Okay.  We are. Thank you. Thank you. We have restored two minutes. Mr. Bannon. Thank you, Your Honor. I just want to make a point I just want to make three quick points. Counsel for the defendant was saying that this is not a highly difficult patent invention but this court in rapid litigation management at 827 F3rd 1042 at 1052 said patent eligibility does not turn on ease of execution or obviousness of application. So whether this is a simple invention really isn't relevant to whether it's an abstract idea under step one or fail step two. In terms of automation of just responding what the defendants have said in terms of the abstract idea is that this is just simply responding adding just a bit more detail to the district court's abstract idea of responding to a sender of a message. But this court has also found in McRow that if the computer is used to perform a distinct process to automate a task previously performed by a human that is still patent eligible subject matter. So because there's a device here that may automate what was previously done by people does not make it ineligible for patenting. And then with respect to TLI and the other cases that the defendants rely on if you look at those cases TLI the patent extraction the content extraction you are using a standard device in a standard way. Here you're having to have a new telephone with a new call appearance button that did not previously exist. The phone and the call buttons are the same. There is no such thing as a new button on a telephone. I would disagree with that. There are new buttons on telephones. A call appearance button can have many functionality. In this case the new telephone is not directed to an abstract idea. If you look at the second step of the analysis there are elements that show that it is more than directed to preempting that          The new telephone and the call button are not directly directed to a new object on a telephone.